IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re   CESAR I VARGAS QUIÑONES         \*
                                        \*       BK. 14-9404(BKT)
   Debtor in Possession                 \*       Chapter 11

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>AMENDED</u>**

**DISCLOSURE STATEMENT**

**Table of Contents**

Article I. Introduction and Representations

A. Introduction

B. Representations

C. Defined Terms

Article II. Background Information

A. Formation and History of the Partnership

B. Events Leading to Chapter 11 Filing

C. Bankruptcy Proceedings

Article III. Plan of Reorganization

A. Treatment of Priority Claims

B. Treatment of Secured Claims

C. Unsecured Claims

D. Treatment of Interests

E. Consequences of Default

F. Management

G. Confirmation Possible Where Class Does Not Accept

1

Article IV. Financial Projections

A. Value of the Real Property

B. Current Operations

C. Source and Application of Funds upon Confirmation

D. Projections

Article V. Tax Consequences

Article VI. Liquidation Alternative

Article VII. Conditions to Confirmation

Article VIII. Recommendation

Article I.

Introduction and Representations

**A. Introduction.**

CESAR I VARGAS QUIÑONES., ("herein Debtor"), has prepared and is disseminating this Disclosure Statement to holders of claims against and interests in Debtor for the purpose of soliciting acceptance of its Plan of Reorganization (the "Plan"). Debtor believes this Disclosure Statement contains the information that is material, important and necessary for its creditors and interest holders to arrive at an informed decision in exercising their right to vote for acceptance of the Plan. A copy of the Plan accompanies this Disclosure Statement as Exhibit " C." As holder of a claim or interest in Debtor, your acceptance is important. For a class of claims to accept the Plan, acceptances must be filed by at least two–thirds in amount and more than one–half in number of the Allowed Claims for such class that actually vote on the Plan. A failure to vote on the Plan does not constitute either an acceptance or rejection of the Plan.

**B. Representations.**

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN REVIEWED OR PASSED UPON BY AN ACCOUNTANT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE DEBTOR'S BEST KNOWLEDGE, INFORMATION AND BELIEF. THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

**C. Defined Terms.**

Most words or phrases used in this Disclosure Statement shall have their usual and customary meanings. Some words or phrases when used in the context of the Plan and Disclosure Statement with initial capital letters shall have the definitions set forth in the Plan. Unless otherwise defined, the terms used in this Disclosure Statement shall have the same meaning as in the

Bankruptcy Code or Rules.

## Article II.

## Background Information

A. Personal Information

Debtor in Possession is a Doctor degree in Medicine. On or about November 30, 2011 Debtor was indicted under the provision of Title 21 Section 841(a) (1); 846,860, conspiracy to possess with intent to distribute control substances. Case Number 11-CR 00532-001(JAF).

On or about March 29, 2012, Dr. Cesar I Vargas (Debtor in Possession) pleaded guilty to one count of the indictment.

On August 14, 2012, Dr. Cesar I Vargas was sentenced and committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of forty-eight(48) months and was enrolled in a drug treatment program .

As a result of such imprisonment, Dr. Cesar I Vargas medicine license was suspended and his medical practice came to a standstill and was unable to make payments to its creditors, particularly secured creditor Western bank (now Banco Popular). At the time of the filing of the petition there was pending a foreclosure proceeding before the Superior Court of San Sebastian, Puerto Rico.

Debtor in Possession completed its prison term and is now in the free community. In order to reinstate his medicine license, the debtor has taken all the required courses, continued education credits and he presently requesting from the Medical Licensing Board for the Commonwealth of Puerto Rico the reinstatement of his license, in order to once again provide his medical services to the San Sebastian community.

B. Events Leading to Chapter 11 Filing.

BANCO POPULAR de PR, filed a collection and foreclosure proceedings in the States Court. In order to stay the proceeding and have the opportunity to maximize the value of the properties through an orderly liquidation thru private sale of each of the properties, debtor

4

decided to file for the protection under the provisions of Chapter 11 of title 11 USCA.

C. Bankruptcy Proceedings.

A 341 hearing was held and closed on December 15, 2015. Debtor's counsel appointment was approved on December 9, 2015 (docket #16)) .Soon after the filing of the Banco Popular and the Debtor entered into a stipulation regarding the properties encumbered by the mortgages pledged to the Bank. Said stipulation was filed on April 22, 2015. (Docket # 54). The Stipulation was approved on May20, 2015. (Docket #59)

The Debtor after several hearing before the Medical Certification Board was notified that the Board would allow the issuance of a license to practice medicine.

The Debtor real estate property are also encumbered with embargos by the Puerto Rico Treasury Department and the Internal Revenue service.

Article III.

Plan of Reorganization

Although the following is not a substitute for a careful reading of the Plan, the following is a general discussion of the treatment of Allowed Claims and Allowed Interests under the Plan.

**A. Treatment of Priority Claims.**

1. *Priority Claims.*
Administrative Claims: The debtor must pay a quarterly fee to the United States Trustee for each quarter and Debtor has been paying said fees to US Trustee.

All administrative claims are subject to allowance by the Bankruptcy Court and its determination of the reasonableness of the amounts; any party in interest can object to any claim for administrative fees and expenses.

The holders of Allowed Claims which are Administrative Claims shall receive, on account of such claims, cash in the amount of such claims (I) as soon as practical on or after the Effective Date or (ii) at the option of the Debtor, in accordance with the ordinary business terms of payment of such claims. Professionals employed at the expense of the estate of the Debtor and entities who may be entitled to reimbursement or the allowance of fees and expenses from the

5

estate of the Debtor pursuant to subparagraphs (2) through (6) of §503(b) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with a final order entered pursuant to §330 or §503(b)(2) through (6) of the Bankruptcy Code.

2. *Class 1*A (unsecured taxes).

Debtor has filed its Income tax Returns for the past three years. Prior to the filing of the present petition Debtors tax returns were investigated and as a result of such investigation the debt was determined and notified to the Debtor.

**Class 1A** consists of taxes owed to CRIM that are entitled to priority pursuant to §507(a) (7) of the Code and or are deemed secured by provisions of State Law

As the properties are sold by the Debtor in Possession within the six month period stipulated with Banco Popular. The outstanding Real Property Taxes will be paid out of the proceeds of said sales.

In the event that the Debtor is unable to close the sales on the properties and the stay is lifted then the claims for real property taxes shall be deemed not allowed pursuant to the provisions of section 502 (b)(3).

**Class 1B** (Internal Revenue Taxes). Class 1B consists of the unsecured tax claim held by the Internal revenue Service that are entitled to priority pursuant to §507(a). The Plan once the allowed shall provide for payment within the time period provided for such claims under the provisions of the bankruptcy Code. The IRS has filed a Proof of claim in which is claims an secured interest due the liens on Debtor's properties. It is Debtor's contention that the market value of the properties is not sufficient to sustain the alleged security interest. Debtor will be filing an adversary proceeding to strip IRS liens thus the claims will be treated an unsecured tax claim.

Class 1 C. ( Puerto Rico Treasury Department) Class 1C consists of the unsecured tax claim held by the Treasury Department for the Commonwealth of Puerto Rico. This creditor has also file a Proof of Claim claiming a secured interest on Property of the Debtor. The Debtor also will be filing an adversary proceeding to strip the PR Treasury Department claim and thus the claim will be treated an unsecured tax claim. It is further anticipated that due to the date of said taxes the same be classified as general unsecured claims.

**B. Treatment of Secured Claims.**
**Class 2**. Class 2 consists of the claim of Banco Popular de Puerto Rico.

1 Banco Popular de Puerto Rico: Banco Popular has several mortgages notes pledged as security to monies advances pursuant to certain loan documents.

A stipulation has been executed by the parties whereby the Debtor is granted a terms of six months to sale the properties, the proceeds of said sales would be applied to the outstanding debt. Upon expiration of the six months period, the bank will proceed with the foreclosure of the properties pursuant to the provision of the applicable state law. Out of the proceeds of the sales once executed and after payment of the Tax due on account of Property Taxes ; real estate broker fees and related sales cost the remaining sales proceeds shall be tendered in payment of the secured claim as reflected in the Proof of claim #6

**C. Unsecured Claims.**

**Class 3** A: Class 3 A consists of unsecured claims the holders of which would have recourse against the debtor outside of the context of a Chapter 11 case, or which do not also hold Allowed Secured Claims requiring the holder to first pursue its available remedies against the Property, including all trade debt. The holders of the Class 3 A Allowed Claims shall receive payment from the proceeds after payment to CRIM, and secured creditor.

.

**D. Consequences of Default.**

If "Debtor" is unable to perform the terms and conditions of this Plan, then it will be in default. The security interests and liens that survive the Plan are enforceable obligations that provide remedies in case of default; in particular, secured creditors could hold trustee's sales of their deeds of trust and the Reorganized Debtor would lose its Property. Secured creditors have recourse only to the collateral securing their claims, and unsecured claimants have recourse only to the Reorganized Debtor.

**E. Confirmation Possible Where Class Does Not Accept.**

The Court will be asked to confirm as to any class of claims or interests that does not accept the Plan. To do so, the Court must find that the Plan: (1) is fair and equitable with respect to each class of claims or interests that is impaired and as not accepted the Plan; and (2) that each holder of a claim or interest receives or retains under the Plan, on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that would be received or retained if the Debtor's property were liquidated under Chapter 7 of Title 11 of the Code. "Debtor" believes the second requirement is satisfied as demonstrated by the Liquidation Analysis set forth below in article VI. "Debtor" believes the first requirement is satisfied with respect to any class that might not accept the Plan. If a Class of Secured Claims does not accept the Plan, the Code provides that the fair and equitable requirement is satisfied if the class retains its lien and receives deferred cash payments of a present value equal to the value of the claimant's secured interest in the collateral. "Debtor" believes this requirement is satisfied as to each Class of Allowed Secured Claims, because the Plan provides for them to receive the

value of their interest in their collateral.

If a class of unsecured claims does not accept the Plan and they are not paid in full with a market rate of interest, the fair and equitable requirement of the Code provides that no junior class of interests can receive or retain any property under the Plan on account of their interests. "Debtor" believes this requirement is satisfied by the Plan because, in the event an unsecured class fails to accept the Plan, then the various classes of interests will not receive anything.

THE FOREGOING IS A SUMMARY OF THE PLAN AND CREDITORS ARE URGED TO READ THE PLAN IN FULL. CREDITORS SHOULD CONSULT WITH COUNSEL IN ORDER FULLY TO UNDERSTAND THE PLAN, WHICH IS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR.

Article IV.

Financial Projections

**A.1 Value of the Real Property.**

Enclosed as exhibit A is the description and appraise value of debtor's properties.

**2. Value of movable property and equipment**
The existing inventory and movable property has a value of 0.00

**B. Current Operations.**

Debtor is presently awaiting the issuance of his medical license to practice. The Puerto Rico Medical Board has determined to grant debtor in Possession his medical licensce. At the time of the filing of the present amended Disclosure Statement the only thing pending is the actual signing of the license by one of members of the Board. Once issued the Debtor anticipate to commence immediately to work in this professional field of expertise.

**C. Source and Application of Funds upon Confirmation.**

The source of the funds of the Debtor will be the monies generated from the sale of the properties and or rent. Additionally, once the debtor opens his office for the practice of medicine any payment plan to unsecured creditor will funds from said income.

## Article V.

### Tax Consequences

"Debtor" has not obtained a tax opinion and expresses no opinion as to the tax consequences to the holder of any claim or interest caused by the terms of the Plan of Reorganization. Stockholders are advised and encouraged to obtain their own tax counsel to determine the tax consequences of this Plan. In obtaining that advice, certain matters require particular attention due to their uncertainty and potentially significant tax consequences. For example, significant issues may arise as to the amount of any debts that will be deemed discharged by the Plan and therefore generate discharge of indebtedness income to the partnership which would flow through to the partners; and the amount of tax that would be payable by partners if they withdraw from the partnership or if the Plan is not confirmed and there is a foreclosure.

BECAUSE "Debtor" EXPRESSES NO TAX ADVICE, IN NO EVENT WILL THE Debtor, THE STOCKHOLDERS OR ANY AFFILIATES OR PROFESSIONAL ADVISORS ENGAGED BY ANY OF THEM BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN OR AN ADDITIONAL CAPITAL CONTRIBUTION ARE OTHER THAN AS ANTICIPATED. CREDITORS AND INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THIS PLAN.

### Liquidation Alternative

Debtor estimates the unsecured creditors would receive no distribution in the event of liquidation. Thus liquidation would bring no return to the unsecured creditors and stockholders' interests would be extinguished. Moreover, at a foreclosure sale the selling price may be less than the current appraised value of the movable property. Consequently, Debtor believes the Plan is in the best interest of all creditors and partners. (Exhibit A)

## Article VII.

### Recommendation

"Debtor" recommends that its Disclosure Statement for its Plan of Reorganization be approved.

Respectfully submitted

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 1th day of March 2016

**GARCIA- ARREGUI & FULLANA**
**252 Ponce de León Ave**
**Suite 1101.**
**San Juan, Puerto Rico**
**TEL 787-766-2530**
**FAX 787-756-7800**
**BY:**

S/<u>Isabel M. Fullana</u>
USDC#

**Debtor in Possession**

**S/<u>Dr. Cesar I. Vargas Quiñones</u>**